The case we just heard, United States v. Iska, is submitted and we will now hear argument in United States v. Jeffrey Crandall and Michael McDonald. Is the government back yet? Maybe they're still out in the hall. I don't think they realize that the court gives a certain amount of time. In other words, it says we'll take a five-minute recess. They probably didn't realize the court meant we'd take a five-minute recess. Okay. Are you Mr. Stewart? I am, Your Honor. Mr. Stewart, do you want a reservation of any time? How about two minutes, Your Honor? Two minutes, okay. But I am in brevity and I may not need it. Well, very good. We like that. I'd like to start, if I may, with jury instruction issue, what we've been calling the Anderson instruction. I think the important thing to point out, which is, I hope, very clear, is that Mr. Crandall's claim was that he was an unwitting participant in this fraud scheme. As an unwitting participant, he needed a jury instruction that adequately told the jury they have to look at the entirety of the evidence to try and gauge his sense and his mind and what was going on here, not simply the cut-and-dried deceit instruction that they gave. He must have been found to be conscious of his wrongdoing, and that's the wording of the Anderson opinion. He said to the jury repeatedly and in many different ways, I wasn't conscious of it. In fact, what I saw and considered, I thought was completely reasonable, and therefore, I had no consciousness of the guilt. The government instruction, I'm sorry, the Ninth Circuit instruction, 317 that was given, is an adequate instruction, but it just doesn't go far enough. For example, Mr. Crandall could have, and I think he did, sign in this escrow package a document that said he was the president of the homeowners association. Well, in truth and fact, he wasn't, but he had two responses to that in trial. One, I was told by Phil Benson, who set up this scheme, that that was okay, that we could do that. Or two, that document was in a stack that was an inch thick, and I didn't even realize what I was doing. He just told me to sign, sign, sign, sign, sign. With 317, they could see that as an intent to deceive and just convict him right there, without looking at the entire picture of the rest of the evidence. And that's why the extra language that we submitted, that we grafted from Anderson, was important and should have been given. And in fact, he could have and did, I'm sorry, Mr. Crandall could have and did think the entire scheme was lawful. If the jury was convinced that that was reasonable, under the jury instruction that we proposed and wasn't given, they would have acquitted him. And that's why we asked for that instruction. It's a broader instruction, and it's certainly accurate. Was there no instruction given which, in a general fashion, simply said, ladies and gentlemen of the jury, you must consider all of the evidence, no matter who brought it, or in words to that effect? I believe there was such an instruction, Your Honor, yes. Okay, thank you. But here, we were asking for an instruction that specifically talked about his state of mind. We spent most of the entire defense trying to lay out his state of mind. And in our brief, we laid out, I think, eight or nine different points that came up in trial, indicating his, I won't call it good faith, because that gets us somewhere else, his lack of a consciousness of criminal wrongdoing. In the government's brief, they get, if you will, hung up on the word willful, willfully. We didn't ask for that in the instruction. We didn't want to go there. I think the government went there in their brief because there are a number of cases that support the proposition that willfully is, we're not titled to that. The Gay case, for example, from 1992. But that wasn't the issue, and we were not trying to graft that or anything else onto established case law and this particular instruction. The instruction that we presented was clear. It was concise. It was an accurate statement of the law. And it asked the jury to evaluate Crandall's defense. It also somewhat limited their consideration. Convict only after you are convinced beyond a reasonable doubt that the defendant knowingly and consciously engaged in criminal wrongdoing. In reviewing the failure to give the instruction, what's the question that we must ask? Whether or not the instructions as a whole were adequate for the jury to make a determination of guilt or innocence. And our theory is they weren't. They didn't go far enough. They didn't give the jury the ability to consider all of the things that Crandall laid out there. All the jury had to do was find one little instance where there was a deceit or cheat instance. Boom, they convicted them. We think that's what happened. So it needed to be a broader instruction that basically said, you, Mr. Crandall, had to know that Benson's scheme was illegal and you participated in it. If the only question is whether it's a deceit, my suggestion is they could have and probably did convict him erroneously. The Anderson case really, Arthur Anderson, really is in a posit here, isn't it? That was an obstruction of justice case. I agree with that. Where you're talking about persuasion, which can be innocuous, whereas in this case, both the instruction that the government wanted, the Ninth Circuit instruction and your instruction, start off with the sentence, an intent to defraud is an intent to deceive or cheat. Yes. I mean, that's the guts of the instruction. You wanted to limit it. But the reality is, unlike persuasion, which the Supreme Court found was insufficient in an obstruction of justice case, in this case, they either found an intent to defraud or not. I'm struggling with how your client was prejudiced by that within the confines of a jury instruction. Yes, Your Honor. And our response would be that the concepts of deceive and cheat are very, very narrow. One single instance in this case, maybe not even a material instance of deceit or cheating, could cause the conviction. We want the jury to look at the entire scope of his knowledge, and that's where the second part of our instruction came in. But isn't that the assumption that that's what jurors do? Isn't that what the case law shows? They do, but they need the guidance to do it, is the problem. And, again, like in the Dobson case from the Eighth Circuit, Dobson case, it was some false representations that weren't material to the fraud, and, therefore, the conviction was erroneous. Here, same situation. It could have been the presidential signature that I discussed. It could have been Crandall's promise to give all the purchasers a free refrigerator in light of the fact that there was evidence he never was going to do that. They find one little instance of a deceit or cheating, boom, he gets convicted, and the big picture doesn't get considered. All of our reasonable points about what he thought about, knew, heard, did his due diligence on get thrown out the window with obstructions. Of course, you got to argue all of those things, didn't you? Yes, I did, Your Honor, and, obviously, unsuccessfully, I wouldn't be here. The Dobson case is the one that comes the closest to our situation. This case is also, when we get to the sentencing portion of it, is pretty unique in a lot of ways. But Dobson is the only one that we could find that is post-Anderson, kind of in the same area, and resulted in the same problem that we're complaining about. If I may move on to the sentencing issue, the loss issue. And, again, on loss, our facts are very unique. And as I was thinking about this last night, it occurred to me that there is a little bit of charm for the government's position. When they say this should be like a misbranded drug, you got your drugs, it's not what it's supposed to be, it's therefore worth nothing. Well, I can kind of see that, because here we have real property, branded, if you will, as totally legitimate and ready to go, and it's not. Now, that's their argument. I would suggest the better argument is the law's different treatment of real property in just about every area. Real property is almost never treated the same way goods and services are treated. Do you agree that it would be improper to let your clients benefit from the payments made by the title company to get these units actually converted to condos? Yes, I agree with that. So we're really talking then, are we not, about what is the fair market value of the units as a result of the conspiracy? The government says, in effect, not very much. What about rental value? You can still rent a cooperative that you couldn't sell as a condo, can't you? Yes, Your Honor, that's true. Can't you, by applying that stream of income analysis, cap rate or not, come up with some kind of a fair market value? I think you could, Your Honor, and that would be one of the options if the court were to remand. But I think maybe something that just doesn't jump off the page is that two of the witnesses, two of the seven victims in the case testified. One, Mr. Austin, said he sold his unit. He made a profit of, I think it was $70,000. Can I just ask one question again on housekeeping? You're at 10 and a half minutes, basically. Are you going to split the time or what? I think I was going to ramble on and let Mr. Brannon decide how he wants to do it. You said you wanted to reserve two minutes, but I don't know how you want to cut it up. I'll save him several minutes. Okay, very good. You all decide, and then I'll hold two minutes at the end. Your Honor, where I was going with this was the fact that the government says these condos were worth nothing. Not true. The reason we know that's not true is Jason Austin sold his. How did he sell it? Did he sell it as a cooperative? We don't know. We don't know. That's not part of the record. Was there title insurance issue? I don't know that either, as to him. Do we know whether any of these units got fixed so that they were legitimate condos? As of the time of sentencing, I believe they had not. I believe they had not, other than Austin's, which somehow miraculously sold. The others were worth considerably more than the price the purchasers paid for them. I don't think there's any dispute about that. But as condos? Yes, as condos. Does the record show that this gentleman sold his unit? Yes. It does show it. He got up and said, I sold it, and I profited, and I think, again, it was $70,000. And I've quoted that in my brief, and I think also in my reply brief. What weight should we give to that? Oh, elephant weight, Your Honor, huge, huge. Because it really takes away the government's argument that they were worthless. If this gentleman was able to sell one. As an old real estate lawyer, I must confess I am very skeptical of any legitimate sale of that nature. I mean, you couldn't get legitimate title insurance. It certainly couldn't be sold as a condo unless it was a set-up sale situation. I don't see how could he possibly sell it on the market and make that kind of a profit. Well, and, Your Honor, I think there has to be the blame for these questions lies 50% here and 50% with Mr. Stolper, because we both could have asked those questions and we didn't. Well, I think the main point here is you don't ask because the answer is not exactly what you want to hear. Maybe it was one I didn't want to hear. So you don't say. Yeah, I guess the point is unless you've got some authority to the contrary, I don't know what weight we can give to his testimony about that because it just defies the law. It defies common sense. Well, I would respond by saying let's take the second victim who testified, a woman whose name escapes me right now. She said as of the date of the trial, her condo was worth $56,000 more than it was than when she bought it. Based on what? Well, and, again, I take 50% of responsibility on that, and Mr. Stolper can have the other 50%. I think he'll probably not accept that responsibility. Well, we'll certainly find out. Let me ---- Well, before you go on, if we, by the proposition that the loss was wrongly determined in this case, what should we tell the district court to do? Go back and redetermine the loss. In terms of ---- Basis of what? Well, that's the problem. There are a number of ways to figure loss. My suggestion is that the way the district court figured this one is just unacceptable. It isn't pursuant to the guidelines. It wasn't pursuant to anything. My suggestion is also that it was result-driven. It came up with a nice guideline range that gave us 41 to 51 months, and the court was, I'd suggest, happier with that than the way that you got to it. What would our decision say, though? What would we say? Let's assume we agree that zero, it can't be the value of the real estate. I think I gather they were saying it's worth zero as a condominium because you can't sell it as a condominium. That's what I'd guess. Certainly, and it seems to me that a lot of the questions we've all just asked need to be resolved, and it needs to go back to the district court for hearings on the actual value of the condos, what they were worth in what particular point in time. The actual value of the condos as what? As saleable units. All right. And Mr. Austin, for example, how did he do what he did? What are they worth as of the time of sentencing? What are they worth now? Are all the problems cured? It's not how he did what he did. It can't be how he did what he did, though. That can't be the question, because he may have done something that he knew was a little on the shady side. What we have to do is what were their value? What did they have value as condominiums, and if they did, what is that number? And what would be the formula you'd want us to give them to use? I don't think that this court can really craft a formula. I think all you can do, the best you can do, is send it back for determination of what the loss is, having in mind that the loss is not the total value of this real property. It isn't economic reality. Nobody lost a million nine in this case. Nobody did. All of the victims, I think as of the time of sentencing, made money on this deal. So it can't be the way the district court did it. There are other ways to look at it. But you know why the district court did it the way it did it, don't you? Well, I have my suspicions, yes. Yes. And let's talk about the legitimate reasons he did it. He says you can't sell them as a condominium. Therefore, they have zero value as condominium, and that's where we start. That's what the district court probably did, don't you think? I think so, and I think that was wrong. Well, if that's wrong, what do we tell the district court? Because the district court is going to have the same view when we send it back, unless we give them some ideas. He's going to say the value is zero. You can't sell it as a condominium. The first step is to determine the value as of the date of whenever we do resentencing in this case. That's got to be the first step. But value in what sense? What, as an apartment? No, no, no, as a condo. I believe, well, I don't want to go outside the record. But if I did, I would believe that all of these problems have been taken care of and that they are saleable condos today and the value can be determined. I thought you agreed at the beginning. I asked you whether it would be appropriate to take into account what the title company did, and I thought you agreed that it would not. So at the very least, are we not considering the value of these units as cooperatives, unconverted, indeed clouded title properties as of the date of the trial or earlier? Yes, and that's true. My response was I think the title company's loss, the $63,000, was something that the court could correctly consider, and at one point I thought the court was going to do that, the district court, but didn't. I think I should conclude at this point. Give Mr. Brannon a little bit of time. Okay, then we're going to stop him with two minutes left. You're going to have him go all the way through and have no rebuttal time. However he would like to do it. Okay, very good. I would just like to briefly, my name is Gerald Brannon on behalf of Michael McDonald, briefly address how the court might fashion determining what a reasonable economic loss was in this case. I think that one way to approach it would be to determine the value at sentencing of these units as condominiums. How can you do that? Well, then deduct the amount of money that was spent to perfect them so that they became condominiums, and then deduct the amount of money in repairs that was required to fix them, and then identify a value for the lost time in which the victims were unable to sell the condominiums. But that allows your clients to take advantage of what other people did, and frankly they're good fortune, because there was no guarantee whatsoever that the title company was going to be successful in getting these units converted to condos. Had the political forces in that town, particularly in light of what happened, been such that the city council just said no way are we going to permit this conversion, they would have to this day remained as cooperatives. So I don't see how we can properly let your clients benefit from the ultimate increase in property values as a result of the actions of other people to try to rehabilitate this. How am I missing something? Well, that point is well taken, but there's still value in that property. I understand that, but what's the value at that point other than as rental properties? You can't properly convey them because the title is clouded, and they're not condominiums. There's no subdivision map recorded. So you can't convey them in that setting. So what value is there other than rental? For each individual unit. Correct. At that point, I think the people in each individual building would have to get together and act cooperatively. But again, that's an assumption, speculation, and I don't think the court's required to do that. Isn't the court looking to determine as a result of the actions of these folks what loss was suffered? And we're really talking about the loss at a particular point. We're not talking about what the title company did later, what somebody else did, and the politicians did to approve it ultimately. It's what happened as a result of their actions. And unless you've got some other authority or some other logic, I don't see what the value is other than as rental units, or am I missing something? Well, I would refer the court to application of 2E2I, which credits the amount the victim has recovered from the disposition of the collateral or its face market value at the time of sentencing. Other than that, I would say that at the time of sentencing, they weren't worth anything other than the rental value, were they? Had they been converted at that point? I don't know whether there was a lot of sentencing in this case that extended over a long period of time. I'm not sure when Stuart Title actually perfected with the city. This is a hybrid situation. Isn't the realistic economic aspect of the loss here, the difference in value between these units as apartments versus their value on a hypothetical basis as condos? The problem here is that it's really, really a difficult question to actually identify the loss, but to just take the amount that was paid or the total amount that was paid for the condominiums seems to not be a reasonable approach. I mean, it seems to me there's got to be a more reasonable approach that takes into account the fact that it was real property, these were buildings on land, and they had value apart from that. But I would like to transition at this point, if I may. Well, you actually don't have any more time. I only ceded several minutes to him. He took all my time. I understand. Now, you guys will have to fight that out afterwards. Your time is up, and we thank you for your presentation. And now we're going to go to Mr. Stopler for the government. Can I reserve two minutes for – You don't have two minutes to reserve. It's gone. We talked about that before. Mr. Stopler? Good morning, Your Honor. Andrew Stolper on behalf of the United States. I'm going to spend very little time on the question of the jury instruction. As I understand Mr. Stewart's argument here today, he's saying that his client's defense was that he was an unwitting participant in this. There's jury instruction that deals with that. It's in the government's brief on page 24. It says, jury instruction given was the wire file instruction, the defendant knowingly made up and executed or participated in a scheme to defraud. And it goes on to say that statements or promises were material, that is, they would reasonably influence a person to part with money or property. This was a mail fraud, wire fraud scheme. It was a scheme to deprive people of essentially their homes. And the question is, did Defendant Crandall and Defendant McDonald lie to these people to get their money? And the answer that the jury came back with was a resounding yes. At this point, I think what's happening is the defendants are trying to distance themselves from the Anderson case because it's very clear that the Anderson case just doesn't apply here. Anderson deals with a willfulness case, a tax case or a corruptly persuading case. That's just not this case. This is a straight mail wire fraud scheme about lying to people to get their money. And if the defendant, this just comes down to what the law is, if the defendant lies to someone to get their money and doesn't have the good sense to know that that's against the law, the law has said that doesn't matter. You can't lie to people to steal their money. And if there's something, if you just don't recognize that to be against the law, that's not what the government's required to prove. Under Gay, under the Ninth Circuit model instructions, this jury was properly instructed and the government thinks that the conviction should be affirmed. As to that, the more interesting question and the one that I think that I'll spend the most of my time on is this question of loss. And between the six of us, I think there's at least eight or nine different opinions about how that loss ought to have been calculated. And it's a tantalizing economic question as to how one does it. And the answer the government has, which is the answer the Sentencing Commission came up with, is we're just not going to engage in that analysis. If you sell someone, and according to the Sentencing Commission, and I'll read the property, property services or goods transferred, rendered, or misrepresented with no credit provided for the value of those items or services. The threshold hook that Mr. Stewart is asking us to bite off on is that goods are not property. Well, the application note actually distinguishes. It says property services or goods. So clearly it's intended to cover property in the most general sense, which would include real property. And the problem with entering into analysis beyond that is the problem that we're all struggling with here today, which is when one sells someone adulterated airline parts, the aluminum has value, doesn't have any value to the person who bought it, but it has some value. How do you account for that? And the guidelines and the Seventh Circuit, the Second Circuit, the Third Circuit have all said, uh-uh, we're not going to engage in that analysis. If you lie and say this thing is a properly, this is a properly converted condo, this is a properly approved drug, this is a properly prepared pacemaker or airline part, you don't get a credit for loss when it's determined that you knew that this was not properly approved or properly credited. And so before we go down that road of all the different possible economic analysis, I think the first threshold question is, should we engage in that analysis? I think the law... Let me ask you this, counsel. The application note 2F little Roman 5 seems to me to make clear that real property is not a good and its valuation is going to be treated differently. That note says, in quotes, goods for which regulatory approval by a government agency was required, not real property, but goods, but not obtained and was obtained by fraud, loss shall include the amount paid for the property, services, or goods transferred, rendered, or misrepresented with no credit provided for the value of those items or services. Now, that's not real property. And the Zulp case, which I, by the way, wrote, makes it clear that there is no single universal method for loss calculations. So why can't we go beyond this concept that the district court looked at? Because there's, the answer is because it's perhaps an unsolvable riddle. Your Honor said... We're talking about fair market value, are we not? Certainly, Your Honor. And that's decided every day, every day in the marketplace. It is, Your Honor. And I think the theory that Your Honor suggested was the rental value of the properties. Interesting. It's an interesting theory, except that the victims here didn't bargain for rental property. They bargained for a condominium. And so to say that they're entitled to the rental value of the properties would be... But that's not what we're talking about here. We're talking about what the sentence of these people should be. And the sentence is based on the concept that the loss they caused is what's determined. So it has nothing to do with what these people bargained for. Admittedly, they weren't bargaining for a rental unit. But the value of the property is the fair market value of the property. That's the amount of loss that was caused. Because if somebody came in, all these co-conspirators and everybody were gone, and they came to this property, and it wasn't converted to a condominium, and all you had was these units, all you could do is to rent it, basically, until you did get it converted or you blade it and raise the property and start from scratch. But at that point, the fair market value arguably was the rental value. Why is that wrong? Because the people who were — I understand Your Honor's position saying that, empirically, these things could have been rented. But that's true in all of these types of cases. Airline parts that are adulterated can be melted down for aluminum, and they have some of that. No, but you've got a different story with airline parts that are adulterated, because they're worth nothing except the salvage value of the material in them. Well... Here, they bargained for condominiums, and they didn't get condominiums, without a doubt. Your Honor... But they got something, and the something they got had a value, didn't it? Your Honor, to change it from airline parts that simply were not properly approved but are otherwise up to specifications, those would — under the guidelines, those airline parts would still be deemed to have a zero value, because the people buying them bargained for that approval. And in terms of, you know, what the rental — you know, so when you take that analysis, in all these cases, drugs that are perfectly fine but aren't FDA approved, they have some economic value, but they don't have any economic value to the person who was buying them. But why should that be the standard? Aren't we really talking about just for sentences here? We're talking about what loss did these people cause? And the answer, Your Honor, is because the loss they caused to the victims. Okay, now, is that the question? What authority do you have that the point is the loss to the victims? None, Your Honor, except that that's the premise of the fraud scheme, is that they caused... Well, I understand from a conviction perspective, that's what you're looking at. I'm looking at sentencing, and I'm asking you — I hope there is some — is there any authority for your position that the measure of loss here is the loss to the victims as opposed to the actual monetary loss based upon a fair market value? Your Honor, I think the United States v. Canova, a Second Circuit case from 2005. What's the site on that? Canova, C-A-N-O-V-A, and the site is 412F331 at 352. I can read it to you, Your Honor, if you like. Sure. The page again, which one? It's 352. It's cited on page 30 of the government's brief. It's actually a block quote in the middle of the page. What are the facts of that case? Canova is a — let me pull it out. I believe Canova is an adulterated drug case. I'm sorry. Do you have any real estate cases? It's not a real estate case, Your Honor. It is an adulterated — I can't recall if it's adulterated drugs or maybe pacemakers, but it's some kind of medical device, a memory service. Well, that's a little bit of a different situation, isn't it? Your Honor, but it — Who wants an adulterated pacemaker? I'm not sure that the — I should be clear. The pacemaker may have been perfectly good, just may not have been approved by the FDA. It may not have been properly tested. So it may not have been adulterated. It may just not have been approved per the FDA. It's a difficulty. It is a difficulty. We're looking at sentencing, and we're not looking at — we're looking at that. We're talking about values, so you're talking about something that's real. And here the court put a zero value, and I think I understand why, because it said you can't sell it as a condominium. It's got a zero value. But they — because they bargained for condominiums, but they got something, and your position is, I gather, we should affirm. That's correct, Your Honor. Because the zero is — No, because the victim paid for a condo and didn't get a condo. Here's what Konova — here's what the court said, Second Circuit said in Konova. When a party fraudulently procures payment for goods or services by representing they were produced or provided according to certain specifications, for example, a condominium, it is not the task of the sentencing court to second-guess the victim's judgment as to necessity of those specifications. Here people bargained for a condo. They bargained for a home. That was their specification, and the defendant instead, according to the record, sold them a can of worms. The Konova court goes on to — Yes, but it doesn't — I'll go ahead and — yes, Your Honor, they were pacemakers, but they weren't — Not worms. They weren't adulterated. Don't you see the different difficulty? Well, I don't know. Maybe you don't even see the question we are raising. I understand. But I would suspect there should be a different rule for real estate. I understand that the court is asking why is — you know, real estate is somehow different. I think there would be a different rule for real estate, and I think there would also be a different rule for fine art. I respectfully disagree with that. I think the rule should be the same because the question isn't real property has some value. A pacemaker, even if it's not properly tested, may have some value on a secondary market, may be able to be sold overseas. It still has some value. It also might kill you when you're depending on its use. I never thought about a secondary market for pacemakers. Is there any evidence of that? Sell them overseas. I assume that — I don't know, Your Honor, but I would guess that you could probably sell them overseas. If you did sell them overseas, you'd have a fraud action. Well, the same would be true for CDs, you know, bootleg CDs. They clearly have — the music is clearly on there. It has that value. There's no question there is some value to bootleg CDs. But regardless, we still ascribe the full amount of the loss to the — the full amount to the victim. So other than — I hear your point about Canova, which is factually distinguishable, but you're saying that that is the authority, that it's the loss to the victim. That's the end of the story. It doesn't — it isn't the value of the property itself. Canova says that, Your Honor. USV mispronounced it, but I think it's Boutani, which is a Seventh Circuit case, says the same thing. How do you deal with Zolp? Zolp? That's a securities case that I wrote. It had to do with loss. Your Honor, I'm not familiar with Zolp. I apologize. You might want to read it. Good case. I will do so. I did not cite it. I did not cite it in our briefs. I don't believe the defendant cited it. But if you're ready to concede, it might be an excellent case. At this point, yes, Your Honor. Once we get past the threshold question of assuming that the court is going to go ahead and find that loss, there should be some offset. No, no, no. You don't know. We don't know what we're going to say. Okay. You can't know. We haven't conferred. For the sake of argument, in case that's the way the panel is going to go, I'd like to be heard at least on the question of how it ought to be calculated. Great. Because it's important for the — if there's going to be a remand, just remanding it back to the district court and saying, you figured it out. Yeah. Because I think the district court, if I know the district court, is going to say, it's what I said the first time. It's worth zero because it's not a condominium. And respectfully, I think it should be remanded back to the district court, consistent with Boutani and consistent with Canova, which is determining what the value was to the individual condo holders. If one of the condo holders, and I think there was at least one, and I'm speaking out of the record, maybe one of them was planning on renting the condo, in which case there may be an appropriate offset for loss as a rental property. When it goes back, if we took your approach, and the judge has an evidentiary hearing, and he found out that the people who bought these incorrectly licensed or entitled units, that they all rented them or a bunch of them rented them. Should any value be given to the rent they got? Arguendo, assuming the panel rejects the government's argument, if it was going to be remanded for the question of what the valuation is, if people were renting them out during that interim time period, then I think, yes, assessing the fair market value based upon reasonable. And doesn't that get back to the issue of that you do need to take into account something other than just what these people intended? Because although they didn't buy it to be rental units, they got a value, which in this hypothetical they then rented and got cash. If their intent changed before the fraud was discovered. Let's say the intent didn't change, but they just were faced with the reality. They parted with some cash. They had this unit. It was right on the ocean. And they were able to get a whole bunch of money in the summertime. Why wouldn't that be part of what they got? I'm having difficulty separating out the intent question. If the person buys it as a condo and then changes their mind and they decide they're going to rent it. No, no. They don't change their mind. They wanted to buy a condo. They clearly wanted to buy a condo. They were really, really upset they were defrauded. But they ended up with this unit. It's a stock co-op. That's all it was. But they do have the right to rent it. And they decided, gee, I've got to get something out of this. So they put it on the market summertime. They're on the beach. And people come and they rent it for a whole lot of money. Shouldn't that be considered? No, Your Honor. I think we would view that as salvage. That basically they didn't get the benefit of their bargain and they're trying to do the best to salvage, doing the best to salvage. So whatever the value, take Judge Ferris' example. Say it's art. And say there's a phony provenance and you get a Caravaggio and it turns out it's a really good fake. And you can sell it for something and somebody does it. The fact that they thought they bought a Caravaggio and it didn't work, it's worth zero. Is that the government's position? It is, Your Honor. It was represented to be a Caravaggio and it was not. And the person who bought it may have offloaded it because they wanted the real thing. But part of what we're trying to measure here is the appropriate punishment for the person telling a lie. And here the lie is this is a condo and they know that it's not. And I candidly think that someone's home is entitled to as much protection as a Caravaggio. But doesn't that do violence to the basic circuit concept here that real economics ought to enter into the loss determination for purposes of sentencing? I don't think that it does. I think in real economic terms, we ought to look at the benefit that the victim got with respect to this transaction. And the real economics, the victim got something they thought was a condo, which they couldn't sell. So then we're left answering the question to this victim, if you want to sell your condo and you can't and it's worth zero to them, then that person has been hurt the full value of their condo. Other than the case that you cited from the Second Circuit, is there any authority that you're aware of that confirms this idea that all we're to measure in these sentencing determinations for loss purposes is the intention of the buyer in this case? Your Honor, U.S. v. Boutani, which is a Seventh Circuit case, 266 F. 3rd, 661. Say it again. 266 F. 3rd, 661. And I can just read the quote if you'd like, Your Honor. The medical effectiveness or its dangerousness after adulteration ought not be the core of the inquiry. Rather, the district court was justified in determining there was a loss because consumers did not get what they bargained for. We agree with the district court's determination that there was indeed loss to the consumers because the consumers bought drugs under the false belief they were in full compliance with the law. Well, I don't question that, but that doesn't deal with the issue we're talking about, which is, admittedly, there's a loss here. We're trying to measure the loss. That case doesn't talk about how you measure the loss, does it? It does, Your Honor. Boutani was a case where drugs were sold, which were medically effective, but simply were not government approved. Okay, but what you just read didn't measure the loss, did it? Oh, in Boutani, Your Honor, they affirmed the district court's determination the loss was the amount of the drugs, the amount the court has gotten. But did the court of appeal analyze what the district court did and conclude on some basis that that was the appropriate standard? I believe they did, Your Honor. In Boutani, the district court made a finding that they weren't going to give any offset for the value of the drugs, even though they were perfectly good drugs according to the district, according to the trial record, because they were not FDA approved. Well, that gets to another issue because there may be actual criminal prosecution for further selling of those, even beyond the people involved in the original conspiracy. But that would be true here, potentially, Your Honor. If someone were to resell a condo knowing that it would probably be murdered. Well, there would be no criminal problem if you leased a condo, would there? I mean, a stock co-op. There's no criminal problem. There would be a criminal problem for leasing it. There may be dispositions of, and this is out of the record, there may be a way to get those drugs FDA approved after the fact. There may be different approvals overseas. I just don't know the answer to those questions. You know, the main reason I expect courts have gone the way you suggest is that it's clean. You're through. Once you start saying what the salvage value is, what this is, what that is, there's no certainty. Your Honor, I agree that it is a much easier way of doing it, but I also think it's also the appropriate way to measure punishment in these circumstances. In a collateral case, someone's trying to borrow money, and they're putting up collateral. If the collateral turns out to be worth less money, they still thought they were getting some collateral, and they do. In these cases, the people are being told they're buying something, and they're getting something totally different. And what's worse in these types of cases, an FDA case, a condo conversion case, an airplane parts case, part of what's going on is a subcategory victim created, which is the regulator who has the right to go ahead and say, you can't sell this, you can't sell that. And so the sentencing guidelines, I think, are making an appropriate approximation by saying, look, if you want to go down that road and say this thing was properly approved by the government, then you're going to have to take the full loss without any offset. That's what the guidelines have held, and that's what the Second Circuit, the Third Circuit, and I think the Seventh Circuit have all held. I appreciate your argument. It's a very interesting case. We thank counsel on both sides for this argument. The matter of U.S. v. Crandall and McDonald is submitted, and we will now hear argument in the final case of Salgado v. Yarbrough.
judges: Farris, Smith, Holland